<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

September 13, 2021

Mark Belland, Esq.
Steven Bushinsky, Esq.
O'Brien, Belland & Bushinsky, LLC
509 S. Lenola Road, Building 6
Moorestown, NJ 08057
*Attorneys for Plaintiffs*

Michael Feldman, Esq.
OlenderFeldman LLP
422 Morris Avenue
Summit, NJ 07901
*Attorney for Defendants*

Thomas Hetherington, Esq.
Jennifer Chung, Esq.
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
*Attorneys for Defendants*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:** ***IBEW Local Union 351 Welfare Fund et al. v. Gerber Life Insurance Co. et al.*,**
     **Civil Action No. 21-317 (SDW) (LDW)**

Counsel:

Before this Court is Defendants Gerber Life Insurance Co. and RMTS, LLC's (collectively, "Defendants") Motion to Compel Arbitration and Dismiss Plaintiffs IBEW Local Union 351 Welfare Fund, Trustees of the IBEW Local Union 351 Welfare Fund, Joseph Knecht, Jr., and Daniel Cosner's (collectively, "Plaintiffs") Complaint (D.E. 1). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated below, this Court **GRANTS** Defendants' motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff IBEW Local Union 351 Welfare Fund (the "Fund") is an employee welfare benefit plan based in New Jersey and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  (Compl. ¶¶ 1, 8.)  The remaining plaintiffs are the Trustees of the Fund, including named Plaintiffs Joseph Knecht, Jr., and Daniel Cosner, who bring this action on behalf of the Fund.   (*Id.* ¶¶ 5, 7.)   The Fund provides health insurance benefits to employees of participating employers and is "self-funded," making it responsible for the healthcare costs incurred by its participants.  (*Id.* ¶ 17.)  To avoid the financial risks associated with very large medical claims, the Fund entered into a stop-loss insurance contract (the "Contract" (Compl. at Ex. A))[1] with Defendant Gerber Life Insurance Co. ("Gerber Life") for the period between January 1 and December 31, 2017 (the "Policy Period").  (*See id.* ¶¶ 11, 19, 24.)  Defendant RMTS, LLC ("RMTS") served as the managing general underwriter for the Contract.  (*Id.* ¶ 12.)

Under the Contract, Gerber Life became responsible to reimburse the Fund for the value of claims in excess of specified monetary thresholds.  (*See id.* ¶ 20.)[2]  The Contract also contained the following provisions at issue in the instant lawsuit:

> 19. **Arbitration:** Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by Arbitration in accordance with the rules of the American Arbitration Association with the express stipulation that the arbitrator(s) shall strictly abide by the terms of this Contract and shall strictly apply rules of law applicable thereto. All matters shall be decided by a panel of three arbitrators. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. This provision shall survive the termination or expiration of this Contract. The parties hereto may alter any of the terms of this provision only by express written agreement, although such alteration may be before or after any rights or obligations arise under this provision.

> 20. **Legal Action[:]** No action at law or in equity may be brought to recover under this Contract less than 60 days after written proof of loss has been furnished as required by this Contract. No such action will be brought more than three years after the time such written proof of loss must be furnished.

(Contract at 15 ¶¶ 19, 20 (the "Arbitration" and "Legal Action" provisions, respectively).)

This lawsuit arises from certain medical expenses that the Fund's third-party claims administrator paid during the Policy Period, for a Fund beneficiary identified as "CG."  (*See* Compl. ¶¶ 18, 28.)  The value of CG's medical claims was approximately $358,233.12.  (*Id.* ¶ 29.)  The administrator submitted claims to RMTS for stop loss coverage for the portion of the payments

---

[1] The Complaint sometimes refers to the Contract as the "Policy."  (*See* Compl. ¶¶ 11, 24.)

[2] Although the Complaint alleges that "Defendants" entered into the Contract with the Fund and that "Defendants" were responsible to reimburse the Fund for excess losses, (*see, e.g.*, Compl. ¶¶ 11, 20), RMTS was *not* a party to the Contract, (*see* Contract at 1 (stating that the "Contract is legally binding between the [Fund] and Gerber Life")). Plaintiffs' allegations against RMTS are mainly predicated on RMTS' actions as a representative or agent of Gerber Life when it participated in the creation and implementation of the Contract.  (*See* Compl. ¶¶ 25–31.)

that was in excess of the Contract's monetary thresholds. (*Id.*)  RMTS denied coverage for CG's claims under the Contract, on its behalf and on behalf of Gerber Life. (*Id.* ¶ 30.)  Plaintiffs allege that by failing to pay, Defendants breached the Contract and subjected the Fund to liability for CG's excess medical expenses. (*Id.* ¶ 31.)

Plaintiffs filed this lawsuit on January 8, 2021, asserting four counts: (1) breach of fiduciary duty under common law and ERISA (Count I); (2) breach of contract (Count II); (3) contractual breach of the implied covenant of good faith and fair dealing (Count III); and (4) tortious breach of the implied covenant of good faith and fair dealing (Count IV). (*Id.* ¶¶ 34–68.)  Defendants subsequently filed the instant Motion to Compel Arbitration and Dismiss the Complaint. (D.E. 5.)  In the alternative, Defendants moved to dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6). (*Id.*)  The parties timely completed briefing. (D.E. 5, 7, 8.)[3]

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, was enacted to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011) (noting that "our cases place it beyond dispute that the FAA was designed to promote arbitration"); 9 U.S.C. § 2 (providing that written arbitration agreements "shall be valid, irrevocable, and enforceable").  "When a district court is presented with a motion to compel arbitration, it must answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement."  *Ellin v. Credit One Bank*, Civ. No. 15-2694, 2015 WL 7069660, at *2 (D.N.J. Nov. 13, 2015); *see Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009).  To conduct its inquiry, the court applies "ordinary state-law principles that govern the formation of contracts."  *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[4]

## III.    DISCUSSION

Plaintiffs do not dispute the validity of the Contract's Arbitration provision, but instead argue that the Legal Action provision provides an alternative remedy—litigation instead of arbitration. (*See* D.E. 7 at 4–9.)  According to Plaintiffs, the two Provisions "provide[] parties with two forums to resolve a dispute." (*Id.* at 5.)

However, a plain reading of the Contract yields no such second option.  The Contract plainly states that "[a]ny controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by Arbitration."  (Contract at 15 ¶ 19.)  Plaintiffs' proposed interpretation would require this Court to replace the word "shall" with the word "may."  *Compare Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) ("The word 'shall' is ordinarily [t]he language of command." (quotation omitted)), *with Riverside Chiropractic Grp. v. Mercury Ins. Co.*, 961 A.2d

---

[3] This Court denied Plaintiffs' request to file a sur-reply.  (*See* D.E. 9, 10, 11.)

[4] Because this Court will grant Defendants' motion and dismiss this case pursuant to the FAA, it does not recite the applicable standard under Rule 12(b)(6) or address Defendants' Rule 12(b)(6) arguments.

21, 27 (N.J. Super. Ct. App. Div. 2008) (holding that arbitration is not mandated where an agreement says a party "'may' submit to arbitration"). To adopt Plaintiffs' interpretation would also require this Court to ignore the Arbitration provision's explicit requirement that the parties may alter its terms "only by express written agreement." (Contract at 15 ¶ 19.)

Arguably, there is a tension between the Contract's Arbitration provision, which effectively bars all Contract-related lawsuits, and its Legal Action provision, which bars lawsuits that are out of time. There is also a tension between competing policy interests and principles of contract construction. *Compare Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (holding that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, . . . [including] the construction of the contract language itself" (citations omitted)), *with Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (holding that "a court should construe ambiguous language against the interest of the party that drafted it," which in this case is Gerber Life (citations omitted)), *and Schneider v. New Amsterdam Cas. Co.*, 92 A.2d 66, 68 (N.J. Super. Ct. App. Div. 1952) (holding that "insurance contracts must wherever possible be liberally construed in favor of a policyholder or beneficiary thereof, and strictly construed against the insurer," including where "the policy contains inconsistent or conflicting provisions" (citations omitted)).

Despite the tensions, in the Court's view, there is no ambiguity or conflict to resolve. The Legal Action provision is simply a limitations provision, one that is statutorily required to be included in certain types of insurance contracts in New Jersey. *See* N.J. Stat. Ann. § 17B:27-46.[5] The Legal Action provision does just what it says in plain language: it bars certain lawsuits. Nothing in its language affirmatively offers an alternative choice of forum. In contrast, the Arbitration provision *commands* the arbitration of any claims arising from a breach of the Contract. The command is all-encompassing and unequivocal, and this Court will enforce it.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Arbitration is **GRANTED** and this matter shall be **DISMISSED**. An appropriate order follows.

/s/ Susan D. Wigenton<br>
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.

---

[5] Section 17B:27-46's requirement for group health insurance policies states that:

> There shall be a provision that no action at law or in equity shall be brought to recover on the policy prior to the expiration of 60 days after proof of loss has been filed in accordance with the requirements of the policy and that no such action shall be brought at all unless brought within 3 years from the expiration of the time within which proof of loss is required by the policy.